**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**KAITLIN PACE, D.V.M,**

               **Plaintiff,**

               v.

**TOWN AND COUNTRY
VETERINARY CLINIC P.C. et al.,**

               **Defendants.**
_____

**3:20-cv-279
(GLS/ML)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Wigdor LLP<br>85 Fifth Ave.<br>New York, NY 10003 | MICHAEL J. WILLEMIN, ESQ. |
| Dorf & Nelson LLP<br>The International Corporate Center<br>555 Theodore Fremd Avenue<br>5th Floor<br>Rye, NY 10580 | CHRISTINE L. HOGAN, ESQ. |
| **FOR THE DEFENDANTS:**<br>Barclay Damon LLP<br>80 State Street<br>Albany, NY 12207 | BENJAMIN M. WILKINSON,<br>ESQ. |
| Barclay Damon Tower<br>125 East Jefferson Street<br>Syracuse, NY 13202 | EDWARD G. MELVIN, ESQ. |

**Gary L. Sharpe**

**Senior District Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff Kaitlin Pace, D.V.M commenced this action against defendants Town and Country Veterinary Clinic P.C., Michael Hebert, and Samantha Sousa alleging violations of Title VII of the Civil Rights Act of 1964[1] and New York State Human Rights Law (NYSHRL).[2]  (Am. Compl., Dkt. No. 12.)  Now pending is defendants' motion for partial summary judgment regarding Pace's Title VII retaliation claim and her ability to seek damages in the form of "front" and "back" pay.  (Dkt. No. 38.)  For the reasons that follow, defendants' motion is denied.

## II. Background[3]

The Clinic is a veterinary clinic with locations in Greene, Ogdensburg, Potsdam, and Massena, New York; Hebert is the Clinic's business manager[4]; and Sousa is the manager of the Clinic's Greene, New York,

---

[1] *See* 42 U.S.C. §§ 2000e-2000e-17.

[2] *See* N.Y. Exec. Law §§ 290-301.

[3] Unless noted otherwise, the facts are undisputed.

[4] Pace contends that Hebert's title is simply "Manager."  (Pl.'s Statement of Material Facts (SMF) ¶ 2, Dkt. No. 43.)

2

location.  (Defs.' Statement of Material Facts (SMF) ¶¶ 1-3, Dkt. No. 38, Attach. 1.)  Pace is a former employee of the Clinic, who served as an associate veterinarian at the Clinic's Greene and Potsdam, New York, locations, from March 2018 until her termination on January 13, 2020. (Defs.' SMF ¶¶ 4-5, 56.)

In mid-September 2019, Pace informed the Clinic that she was pregnant.  (*Id.* ¶ 18.)  Pace contends that, at this time, she also requested accommodations from "upper management" regarding her pregnancy. (Pl.'s Statement of Material Facts (SMF) ¶ 69, Dkt. No. 43.)  Defendants' allege that *prior* to Pace's announcement of her pregnancy, in mid-August 2019,[5] Pace's compensation structure was revised, and that she was converted from a salaried employee to an hourly employee, a decision that defendant's contend was made for purely economic reasons.  (Defs.' SMF ¶¶ 14-17.)  Pace alleges that her compensation was converted from salaried to hourly in October 2019, *following* the announcement of her pregnancy, and that this conversion "was a direct result of her pregnancy." (Pl.'s SMF ¶¶ 14-17.)

---

[5] Paragraph twenty-two of defendants' statement of material facts appears to contradict this timing, and notes that Pace's compensation was restructured in October 2019. (Defs.' SMF ¶ 22.)

3

Defendants further contend that, after Pace announced her pregnancy, she requested related accommodations to her schedule, which the Clinic granted. (Defs.' SMF ¶ 20.) Pace alleges that she requested accommodations first from Sousa, before she announced her pregnancy to upper management, and that Sousa allowed for these accommodations, but once upper management became aware of the accommodations, after she announced her pregnancy, the accommodations were terminated. (Pl.'s SMF ¶ 20.)

On October 15, 2019, Pace and Hebert had a meeting and subsequently engaged in an email exchange from October 16, 2019 through October 21, 2019, regarding her compensation. (Defs.' SMF ¶¶ 21, 25.) In this email exchange, Pace stated that she "couldn't help feeling a bit discriminated against," (*id.* ¶ 31), and that she wanted to be "treat[ed the same] as all of [the Clinic's] other hourly employees," (Dkt. No. 38, Attach. 6). On January 2, 2020, Pace again requested pregnancy accommodations from the Clinic, with a supporting note from her doctor. (Defs.' SMF ¶ 35.) Pace requested accommodations a third time on January 10, 2020. (Dkt. 44, Attach. 13.)

On January 3, 2020, Sousa met with Pace to discuss these

4

accommodations.  (*Id.* ¶ 45.)  Defendants allege that, at this meeting Pace "became irate, asked if her schedule was covered, and abruptly left the meeting," and, subsequently failed to return to the Clinic.  (*Id*. ¶¶ 46, 48.)  Pace, however, contends that she acted professionally during the meeting, but was nonetheless suspended from the Clinic without pay, and given the following ultimatum: "come back to work without any restrictions or go out on full-time disability leave."  (Pl.'s SMF ¶ 46.)  Pace further alleges that her suspension was the reason she did not show up to work, but that she arranged coverage for her scheduled shifts.  (*Id.* ¶¶ 44, 48.)  Defendants contend that shortly after Pace's suspension "the Clinic . . . discovered that [Pace] had engaged in a pattern of failing to update patient records documenting the results of physical examinations into the veterinary software system," and that this, along with Pace's failure to show up to work, led to her ultimate termination on January 13, 2020.  (Defs.' SMF ¶¶ 51, 56.)  Pace disputes the accuracy of this narrative, maintaining that the only reason she failed to submit the required documentation was because she did not have physical access to the Clinic's systems after her suspension, and that her failure to submit this documentation was not the cause of her termination, but, rather, that it was related to her pregnancy.

5

(Pl.'s SMF ¶¶ 51, 56-57.)

Shortly after her termination from the Clinic, Pace acquired part-time employment at another clinic in Endicott, New York. (Defs.' SMF ¶ 58.) Defendants allege that Pace's employment agreement with the Endicott clinic never contemplated anything more than part-time work, while Pace contends that "[t]he . . . [employment] offer contemplated that . . . Pace would eventually be full-time." (Defs.' SMF ¶¶ 58-59; Pl.'s SMF ¶¶ 58-59.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

#### A. Title VII Retaliation

Defendants move for summary judgment with respect to Pace's Title VII retaliation claim. (Dkt. No. 38, Attach. 23 at 10-20.) Specifically, they argue that Pace cannot make out a prima facie case of retaliation because she did not engage in any protected activity, and, in the alternative, that

6

there is no causal connection between any alleged protected activity and an adverse employment action. (*Id.*) They further assert that summary judgment is appropriate because Pace was ultimately terminated for legitimate, non-retaliatory reasons. (*Id.* at 18-20.) Pace contends that she engaged in protected activity when she (1) requested schedule accommodations from management due to her pregnancy, in September 2019, (2) emailed Hebert on October 16, 2019, after her employment status was changed from salaried to hourly, saying that she was "feeling a bit discriminated against," (3) emailed Hebert on October 21, 2019, expressing her displeasure with her disparate treatment from other hourly employees, (4) requested pregnancy accommodations again on January 2, 2020, and (5) emailed Hebert on January 10, 2020, notifying him that she could return to work so long as her requested accommodations were in place. (Dkt. No. 45 at 10-15.) Pace further argues that the temporal proximity between her protected activity and the adverse employment actions she was subjected to establishes a causal connection. (*Id.* at 16-18.) Finally, she asserts that the allegedly legitimate reasons for her termination were pretext for retaliation. (*Id.* at 18-23.) For the reasons outlined below, defendants' motion is denied as to this claim.

7

Title VII retaliation claims are analyzed under the *McDonnell Douglas* burden shifting framework. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2015); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, a plaintiff must demonstrate "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (citation omitted).

A plaintiff engages in "protected activity" when she "(1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding[,] or hearing arising under Title VII." *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012). To constitute a protected activity for purposes of a retaliation claim, "the plaintiff is required to have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs*, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks and citation omitted). Informal oppositions of discrimination, such as "making complaints to management, writing critical

8

letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges" have been considered forms of protected activity. *See Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000) (citation omitted). "[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001); *see Kraiem v. JonesTrading Inst. Servs.*, No. 1:19-cv-05160, 2021 WL 5294066, at *5 (S.D.N.Y. Nov. 12, 2021) ("There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." (citations omitted)).

"Once a prima facie case of retaliation is established, the burden . . . shifts to the employer to demonstrate that a legitimate, non[-retaliatory]

9

reason existed for its action." *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001); *see Cox v. Onondaga Cnty. Sheriff's Dept.*, 760 F.3d 139, 145 (2d Cir. 2014).

"If the employer demonstrates a legitimate, non-discriminatory reason, then '[t]he burden shifts . . . back to the plaintiff," *Summa*, 708 F.3d at 125, who must demonstrate "that the [employer's] stated rationale is mere pretext," *Cox*, 760 F.3d at 145. To demonstrate this, a plaintiff must show that retaliation was a "but for" cause of her adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). To demonstrate but for causation, a plaintiff does not need to "pro[ve] that retaliation was the only cause of the employer's action, but . . . that the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Here, defendants dispute only the first and fourth elements of Pace's prima facie case. (Dkt. No. 38, Attach. 23 at 11-18.) Defendants are correct in their assertion that Pace's requests for pregnancy

10

accommodations[6] alone do not constitute protected activity. *See Raucci v. Ctr. for Disability Servs.*, No. 1:19-CV-1002, 2020 WL 777269, at *4 (N.D.N.Y. Feb. 18, 2020) (finding a request for pregnancy accommodations "unaccompanied by a complaint that [the plaintiff] believed she was being discriminated against because of her pregnancy, [wa]s not a protected activity" because it "was not an action taken to protest or oppose statutorily prohibited discrimination" (internal quotation marks and citation omitted)). However, Pace alleges two other instances of protected activity—emailing Hebert on October 16 and October 21, 2019—both of which constitute protected activity. (Dkt. No. 45 at 11-15.) Pace sent the October 16, 2019 email shortly after her employment was converted from a salaried employees to an hourly employee, (Defs.' SMF ¶ 17; Pl.'s SMF ¶ 17[7]), a decision itself that occurred shortly after she informed the Clinic that she was pregnant, (Defs.' SMF ¶ 18). The timing of the email, coupled with the fact that Pace mentioned the physical limitations she faced given her

---

[6] Pace argues that she engaged in five instances of protected activity, three of them being requests for pregnancy accommodations, once in September 2019, and twice in January 2020. (Dkt. No. 45 at 10-15.)

[7] Defendants' contend that the conversion of Pace from salaried to hourly employee occurred in "mid-August 2019," (Defs.' SMF ¶ 17), but later contradict this time line and assert that it occurred in October 2019, (*id.* ¶ 22), while Pace asserts that it occurred in October 2019, (Pl.'s SMF ¶ 17). This alone constitutes a material disputed fact such that summary judgment is inappropriate.

pregnancy multiple times in the email, and explicitly stated that she "couldn't help feeling a bit discriminated against," (Defs.' SMF ¶ 31; Dkt. No. 38, Attach. 6), indicate that Pace was complaining about unfair treatment related to her pregnancy, which constitutes Title VII protected activity.  *See Johnston v. Carnegie Corp. of N.Y.*, No. 10 Civ. 1681, 2011 WL 1118662, at *5 (S.D.N.Y. Mar. 23, 2011) ("As [plaintiff]'s email . . . reference[d] his disability, . . . [a] reasonable interpretation of [his] e[]mail is that [plaintiff] believed management's proffered explanations were pre-textual, and that his hours were actually reduced because of his disability."); *see also* (Dkt. No. 44 ¶ 29 (Pace's declaration, attesting that her email was a "complain[t] that [she] was being discriminated [against] because of [her] pregnancy")).  The same is true regarding Pace's October 21, 2019 email to Hebert, in which she expressed her displeasure with her disparate treatment from other hourly employees, (Defs.' SMF ¶ 26; Dkt. No. 38, Attach. 6), given that this email was sent in close proximity to when she informed the Clinic she was pregnant and was subsequently converted from a salaried employee to hourly, (Defs.' SMF ¶¶ 17, 18; Pl.'s SMF ¶ 17), a reasonable jury could conclude that the disparate treatment Pace was complaining about was due to her pregnancy.  *See Van Brunt-Piehler v.*

12

*Absolute Software, Inc.*, 504 F. Supp. 3d 175, 194 (W.D.N.Y. 2020) ("[G]iven the evidence of the [anti-female] culture" and "[v]iewed in that context, [p]laintiff need not have used the magic words 'gender discrimination' to make clear that her complaints were based on her perception that she was being discriminated against based on her gender."); *see also* (Dkt. No. 44 ¶ 29). Accordingly, while Pace's three requests for pregnancy accommodations do not constitute protected activity for the purpose of establishing her prima facie case, her October 16 and 21, 2019 emails do.

Further, defendants argument that there is no causal connection between Pace's protected activity and any adverse employment action she suffered is without merit. (Dkt. No. 38, Attach 23 at 17-18.) Two days after Pace sent her October 16, 2019 email, she was stripped of her managerial duties. (Pl.'s SMF ¶¶ 79-80; Dkt. No. 44 ¶ 30; Dkt. No. 46, Attach. 6 at 99-100.) The close proximity of these events,[8] would permit a jury to conclude that this is a causal connection for the purpose of Pace's prima facie case.

---

[8] Pace was also suspended without pay, and ultimately terminated, in early January 2020, approximately two to three months after her October 16 and 21, 2019 emails, (Pl.'s SMF ¶¶ 100, 108), which would also support a causal connection. *See Kraiem*, 2021 WL 5294066, at *5.

13

*See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 92 (2d Cir. 2015) (finding that adverse employment actions that followed protected activity by less than "three months," "two months," and "approximately two months" were temporally proximate for the purpose of alleging causation); *see also Ejiogu v. Grand Manor Nursing and Rehabilitation Ctr.*, No. 15cv505, 2017 WL 1322174, at *3 (S.D.N.Y. Apr. 5, 2017) ("In the Title VII retaliation context, the Second Circuit has found adverse employment actions where a plaintiff was demoted to a non-managerial title after complaining about h[er] employer's discriminatory employment practices."). Accordingly, summary judgment is inappropriate on the theory that Pace has not established her prima facie case.

Assuming without deciding that defendants have proffered a legitimate, non-retaliatory reason for the adverse employment actions taken against Pace, Pace has put forth evidence that could allow a reasonable jury conclude that defendants' justification is pretext. Defendants' offer evidence that Pace behaved unprofessionally in a meeting regarding her requested pregnancy accommodations, "did not appear for work and did not obtain coverage for her shifts," and failed to complete required patient documentation, and, that these instances lead to

14

her ultimate termination.  (Dkt. No. 38, Attach 10 ¶¶ 12-14; Dkt. No. 38, Attach. 2 ¶¶ 28-29, 31.)  However, Pace counters this by providing evidence that she was professional in the meeting regarding her requested pregnancy accommodations, (Dkt. No. 46, Attach. 6 at 84-85; Dkt. No. 44 ¶ 58), that she was specifically instructed not to come to work on the days defendants contend that she "did not appear," and that she still confirmed that her shifts would be covered by other employees, (Dkt. No. 46, Attach. 6 at 84-85; Dkt. No. 44 ¶¶ 50, 59; Dkt. No. 46, Attach. 9 at 99-103).  Further, with respect to her alleged failure to complete certain documentation related to patients, Pace provides evidence that this failure was due to the fact that she was suspended without pay and therefore could not complete this task, but otherwise would have.  (Dkt. No. 44 ¶¶ 60, 62; Dkt. No. 46, Attach. 6 at 91.)  Accordingly, summary judgment is inappropriate on this issue.  *See Zann Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.  From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.").

## B. <u>Front and Back Pay</u>

Defendants seek summary judgment precluding Pace from seeking front and back pay, alleging that she has failed to mitigate her damages by not seeking other full-time employment after her termination. (Dkt. No. 38, Attach. 23 at 21-25.) Pace argues that defendants have not adequately demonstrated that other suitable employment opportunities existed, and, additionally, that she reasonably attempted to mitigate her damages. (Dkt. No. 45 at 23-25.) Disputed issues of fact preclude summary judgment on this issue.

Title VII authorizes front pay and back pay as potential remedies for unlawful employment practices. *See* 42 U.S.C. § 2000e-5(g)(1); *see also Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012). "Back pay is 'an amount *equal to the wages* the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits.'" *Noel*, 697 F.3d at 213 (quoting *United States v. Burke*, 504 U.S. 229, 239 (1992)). Front pay constitutes "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S.

16

843, 846 (2001).

An employer seeking to avoid an award of front or back pay bears the burden of demonstrating that a plaintiff failed to mitigate her damages. *See Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir.1997); *see also Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 93 (E.D.N.Y. 2020) ("Under Title VII, a prevailing plaintiff forfeits her right to back or front pay if she fails to mitigate damages."). "This may be done by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." *Dailey*, 108 F.3d at 456. An employer "is released from the duty to establish the availability of comparable employment if it can prove that the employee made *no* reasonable efforts to seek such employment." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir.1998) (emphasis added).

"[A] plaintiff's duty [to mitigate] is 'not onerous, and does not require [her] to be successful in mitigation.'" *Antoine v. Brooklyn Maids 26, Inc.*,489 F. Supp. 3d 68, 93 (E.D.N.Y. 2020) (quoting *Dailey*, 108 F.3d at 456). The "assessment of the reasonableness of a plaintiff's effort to mitigate encompasses more than a simple review of the duration of . . . her job search . . . ; instead, it entails a consideration of such factors as the

17

individual characteristics of the claimant and the job market." *Dailey*, 108 F.3d at 456 (internal quotation marks and citation omitted).

Defendants offer evidence that employment opportunities comparable to Pace's role at the clinic were available around the time of her termination from the Clinic. (Dkt. No. 38, Attach. 10 ¶¶ 17-24, Dkt. No. 38, Attach. 12; Dkt. No. 38, Attach. 13.) Defendants further point to evidence that shows Pace accepted a part-time veterinarian job after her termination, and made no attempt to find other employment that was comparable to her position at the Clinic, which was full-time. (Dkt. No. 38, Attach. 17 at 110-15, 118.) However, Pace testified at her deposition that if it were "[her] choice" she would have acquired full-time employment, but that "it is not the easiest to find a good [full-time] opportunity when you're seven months pregnant and about to go on maternity leave." (*Id.* at 118.) She further testified that it was her understanding that her part-time employment would eventually become full-time, because the arrangement was "somewhat open-ended," with the option for "progressively . . . more and more hours." (*Id.* at 111-12.) Viewing these facts in the light most favorable to Pace, a reasonable jury could conclude that she "ma[d]e reasonable efforts to obtain" "suitable work." *Dailey*, 108 F.3d at 456; *see*

*Hall v. Family Care Home Visiting Nurse & Home Care Agency*, No. 3:07 Civ. 0911, 2010 WL 1487871, at *2 (D. Conn. Apr. 12, 2010) ("During the time period [plaintiff] alleges she was searching for work . . . she was pregnant . . . . Considering an employee's limited obligation to mitigate damages, . . . as well as the potential limitations in finding employment [plaintiff]'s pregnancy and childcare issues may have caused, this court believes that a reasonable jury could find that [plaintiff]'s efforts to find work were reasonable.")

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for partial summary judgment (Dkt. No. 38) is **DENIED**; and it is further

**ORDERED** that this case is deemed trial ready and a scheduling order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 1, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge